## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Justin Lee Brown, | No. 21-cv-405 (SRN/KMM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Captain Pat O'Malley, | |
| Respondent. | |

This matter is before the Court on Justin Lee Brown's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Many of the claims in the petition do not support habeas relief because Mr. Brown failed to preserve them for purposes of federal habeas review by properly litigating them during his state court appeals. Moreover, even if Mr. Brown had litigated his claims in a procedurally appropriate manner, the Court finds that their merits do not justify habeas relief. The Court recommends Mr. Brown's petition be denied and this matter be dismissed with prejudice.

## I.    Background

Mr. Brown is serving a 74-month prison sentence imposed after he pled no contest to first-degree assault, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). [ECF No. 1 ¶¶ 1–5]. The 74-month sentence was based on a cap agreed to as part of his plea agreement. [*See* ECF No. 8-2 at 26 n.4]. The facts of Mr. Brown's case were summarized as follows:

> Close to midnight on August 15, 2017, appellant Justin Lee Brown was involved in an altercation outside of his apartment. According to

1

Brown, A.M. had stopped by, the two had some drinks, and A.M. attacked Brown from behind without provocation as he was leaving the apartment. Brown asserted that he fought back to defend himself, but he also told police that he "got pissed off," threatened to kill A.M., and "stomped him." Witnesses reported seeing Brown strike and kick A.M.'s head as he was lying on the ground. As a result of the assault, A.M.'s ear was "nearly amputated." And A.M. sustained a serious traumatic brain injury that necessitated appointment of both a legal guardian and a conservator.

*State v. Brown*, No. A19-0099, 2019 WL 6461306, at *1 (Minn. Ct. App. Dec. 2, 2019),

*rev. denied* (Minn. Feb. 18, 2020).

Mr. Brown's sentence was at the lower end of the presumptive sentencing range under the Minnesota Sentencing Guidelines. *Id.* However, the trial court denied Mr. Brown's request for a downward departure and a sentence of probation, rejecting his arguments for a more lenient sentence. *Id.* Stearns County District Court Judge Mary Mahler credited Mr. Brown for expressing some remorse over the incident, but found he did not take responsibility for his actions. Judge Mahler noted that although he sought mitigation based on the fact that he was intoxicated at the time of the incident, Mr. Brown refused chemical dependency treatment. And the Judge concluded that Mr. Brown did not act in self-defense because, even if A.M. "initiated the altercation, independent witnesses saw Brown 'kicking and hitting [A.M.] when he was on the ground.'" *Id.*

### *Direct Appeal Briefing*

Although he entered an *Alford* plea, Mr. Brown asked the Minnesota Court of Appeals to review his conviction and sentence for several alleged errors. His appellate counsel filed a brief, and Mr. Brown filed both a *pro se* supplemental brief and a *pro se* reply brief. [ECF No. 8-2]. In his appellate counsel's brief, Mr. Brown's attorney argued:

(1) that Mr. Brown should be allowed to withdraw his *Alford* plea because statements he made at the hearing contradicted any acknowledgment that the state's evidence would be sufficient for a jury to convict him and the trial court failed to independently conclude that there was a strong probability that a jury would convict; and (2) that Mr. Brown should be resentenced because the trial court abused its discretion in denying his request for a downward departure, suggesting that the record supported a more lenient sentence and the court failed to consider the reasons for departing from the guidelines. [ECF No. 8-2 at 7, 30].

In his supplemental *pro se* brief, Mr. Brown raised four issues, but he cited no case law in support of any of his claims. First, he argued that exculpatory evidence—a hand-sized pool of his blood and blood splatter—was destroyed. Mr. Brown claimed that this evidence was near his doorstep where A.M. had attacked him, but it was washed away before it could be formally documented. He argued that the blood evidence would corroborate his version of events, and its destruction made a fair trial impossible, thereby violating his "due process rights." [ECF No. 8-2 at 34–35]. Second, Mr. Brown argued that his trial counsel was ineffective because he "did not build a case and did not even present discovery material that was in [Brown's] favor or numerous mitigating factors." Relatedly, Mr. Brown claimed that his trial counsel did not retain an investigator, and when questioned about it several months after he was charged, his attorney told Mr. Brown that he would have to provide one. This led Mr. Brown to conclude that his attorney would not represent him effectively at trial. [ECF No. 8-2 at 36–37].

3

Third, Mr. Brown claimed that his attorney violated the duty of confidentiality. He stated: "I did not consent to the roundtable and I was unaware of it until [a] July 12th 2018 hearing." [ECF No. 8-2 at 38]. The July 12th hearing was a pretrial conference where the parties agreed to continue the trial, which was scheduled for July 23, 2018. Finally, Mr. Brown asserted that he took the plea agreement under "duress" because of negligent medical treatment. He explained that A.M. had attacked him, that he was injured, and that in the days that followed his arrest, his injuries grew more severe. Mr. Brown claimed that his efforts to advocate for himself regarding his medical condition were "destroyed by [trial counsel] and the Court" as reflected in a conference on January 5, 2018 and a May 17, 2018 omnibus hearing. Thus, he felt coerced into agreeing to the *Alford* plea and claimed his neglected medical treatment constituted "cruel and unusual punishment." [ECF No. 8-2 at 38–40].

Mr. Brown responded to several points made by the State in his *pro se* reply brief. [ECF No. 8-2 at 70–77]. In particular, the State had argued that Mr. Brown's plea was valid, in part, because at the plea hearing Mr. Brown said he considered the plea agreement to be his "best choice" under the circumstances. In his reply brief, Mr. Brown argued for the first time that the only reason he considered the agreement to be the best choice was because his trial counsel advised him that he would be released from jail and sentenced to probation as a result of the agreement.

### *Minnesota Court of Appeals Decision*

The Minnesota Court of Appeals affirmed Mr. Brown's conviction and sentence. First, the court rejected the arguments that his *Alford* plea was invalid "because he acted

4

in self-defense and because the district court failed to independently determine that there

was a strong probability that a jury would find him guilty." *Brown*, 2019 WL 6461306, at

*2. The court reasoned that Mr. Brown had admitted, through his testimony at the plea

hearing and an addendum to his plea petition, "that the state could show that he engaged

in an altercation with A.M., two witnesses would testify that they observed him stomping

or kicking A.M. in the face, and medical evidence would establish that A.M. sustained a

traumatic brain injury." Based on this record, the court of appeals concluded that the trial

court did not err when it found that Mr. Brown knowingly, voluntarily, and intelligently

waived his rights and there was a sufficient factual basis for the plea. *Id.* Next, the court

concluded that although Judge Mahler made no specific finding that there was a strong

probability a jury could convict Mr. Brown, no such finding was required. The court

explained that the record clearly supported the elements of first-degree assault. *Id.*

Second, the court of appeals addressed Mr. Brown's assertion that Judge Mahler

abused her discretion in finding that he was not entitled to a downward dispositional

departure.

> Brown argues that A.M. was the initial aggressor in the altercation, and his
> criminal history, respectful court demeanor, family support, remorse,
> cooperation throughout the proceedings, and willingness to participate in
> alcohol-dependency treatment weigh in favor of a probationary sentence. He
> also argues that his sentence should be vacated because the district court
> failed to weigh the circumstances for and against departure against each
> other.

*Id.* at *3. The court of appeals rejected these arguments and found no abuse of discretion

in the trial court's refusal to depart downward. *Id.*

Finally, the court of appeals found Mr. Brown's *pro se* arguments unavailing. The

court summarized the issues he raised as follows:

> Brown argues that (1) evidence of his blood at the crime scene was
> destroyed, (2) his attorney was ineffective because he did not "build a case"
> or "present discovery material that was in my favor," (3) his attorney
> violated "confidentiality" by participating in a "roundtable" at a court
> hearing, and (4) he pleaded guilty under duress because of his "neglected
> medical treatment" caused by injuries he received during the offense.
> Brown also suggests his neglected medical treatment was cruel and unusual
> punishment and that his due-process rights were violated.

*Id.* The court found that each of these arguments was waived because Mr. Brown cited no

case law to support them. *Id.* (citing *State v. Sontoya*, 788 N.W.2d 868, 876 (Minn.

2010), and *State v. Bartylla*, 755 N.W.2d 8, 23 (Minn. 2008)). Even if Mr. Brown's *pro*

*se* claims had not been waived, the court of appeals found that they lacked merit. *Id.* at

*4. The court found: (1) Mr. Brown's evidentiary arguments were unavailing because he

entered a valid *Alford* plea; (2) he failed to support his ineffective-assistance-of-counsel

claims with any evidence; and (3) his duress argument was not supported by the record.

With respect to the claim of duress, the court of appeals explained that Mr. Brown's plea

petition stated that "he had 'not been ill recently," and at the plea hearing, he stated that

the plea was not induced by any promises or threats. *Id.*

### *Petition for Further Review by Minnesota Supreme Court*

Through appellate counsel, Mr. Brown filed a petition for further review ("PFR")

from the Minnesota Supreme Court. [ECF No. 8-2 at 86–93]. The PFR raised four issues.

First, Mr. Brown argued that his *Alford* plea was invalid. Second, Mr. Brown argued that

the guilty plea was inaccurate because he made statements during the factual-basis

colloquy negating elements of the offense. Third, he argued that the district court erred in denying his request for a downward departure. Finally, Mr. Brown asked the Minnesota Supreme Court to consider whether any of the arguments raised in his *pro se* supplemental brief to the court of appeals entitled him to relief. The Minnesota Supreme Court denied Mr. Brown's PFR on February 18, 2020.

### *Habeas Claims*

In his habeas petition, Mr. Brown asserts eight separate grounds for the writ of habeas corpus to be issued. In Ground One, he asserts that he was "the victim of unprovoked harassment, trespassing, and being assaulted from behind by [A.M.]," and that he was obstructed from being able to present proof of that fact during his state court proceedings. [ECF No. 1 at 4–6 (Ground One)]. Ground One does not specify who was responsible for the obstruction.

In Ground Two, Mr. Brown claims that evidence of his own blood at the scene was destroyed, which would have helped establish that he was the victim of an assault by A.M. However, he claims that he was prevented from making such a showing during his state district court proceedings. [ECF No. 1 at 6–7 (Ground Two)]. Again, Mr. Brown does not clearly specify who obstructed him from making such a showing.

In Ground Three, Mr. Brown asserts that his own attorney prohibited him from presenting evidence of self-defense, specifically photographs of his injuries. He claims that his attorney did not present the evidence showing he acted in self-defense in "actions of dismissal." He also argues that his attorney did not later present self-defense evidence "for trial or mitigation purposes." Finally, he states that his trial counsel continues to

"withhold[] documents that would prove more claims as well as would have proven appeal and post-conviction claims." [ECF No. 1 at 8–9 (Ground Three)]. Mr. Brown does not specify what documents he believes exist, nor the claims that those documents would help him establish.

Grounds Four and Five both address the conduct of Judge Mahler during the district court proceedings. In Ground Four, Mr. Brown asserts that during a January 5, 2018 hearing, Judge Mahler interfered with his ability to obtain a necessary surgical procedure for an abdominal injury. As a result, he was subjected to "prolonged and needless pain and suffering." [ECF No. 1 at 9–10 (Ground Four)]. In Ground Five, Mr. Brown alleges that six months after Judge Mahler prevented him from obtaining surgery, and 11 months after evidence in his case began clearly being obstructed, Judge Mahler spent almost an entire hearing on July 12, 2018 attempting to persuade him to resolve his case. He states "[t]his was causing undue physical and mental duress. [ECF No. 1 at 10–11 (Ground Five)]. Read together, Grounds Four and Five suggest that Mr. Brown is claiming Judge Mahler engaged in judicial misconduct and that his *Alford* plea was the product of duress or coercion, rather than a free and voluntary choice.

In Ground Six, Mr. Brown alleges that his attorney presented him with a plea agreement in September 2018, but never went over the details of the agreement "line by line." Mr. Brown claims that his counsel told him the plea would result in 3–5 years of probation and would include a stipulation that he had acted to prevent further serious injury to himself. After obtaining his signature on the agreement, his attorney instructed him not to mention self-defense during the plea hearing and to agree to everything that

8

was said during that hearing. [ECF No. 1 at 11–12 (Ground Six)]. The Court construes Ground Six as a claim that trial counsel was ineffective in connection with the plea negotiations and plea hearing.

In Ground Seven, Mr. Brown asserts that during his sentencing, Judge Mahler "misconstrue[d] facts … about me not attempting to get into treatment when I was in fact living in a sober living facility with daily testing and programming." Mr. Brown further claims that Judge Mahler admitted during the hearing that he had acted in self-defense, which renders his plea "inaccurate and [his] sentencing unconstitutional." [ECF No. 1 at 12–13 (Ground Seven)]. Mr. Brown admits that he did not raise this issue during his appeal. [ECF No. 1 at 12, 16].

Finally, in Ground Eight, Mr. Brown asserts that he had no intent to harm A.M., that he made every attempt to pacify him and then to flee, but A.M. intended to harm him and took advantage of an opportunity when Mr. Brown turned his back. Thus, he claims that he was wrongfully convicted based on a violation of his constitutional right to due process. [ECF No. 1 at 13–14 (Ground Eight)].

## II.    Legal Standards

Federal courts cannot grant a writ of habeas corpus to a state prisoner unless he has first exhausted all available state court remedies for each of his claims. 28 U.S.C. § 2254(b)(1)(A). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To properly exhaust a claim, a petitioner must "give the state courts one full opportunity to resolve any

constitutional issues" by going through one complete round of appeals in the state courts before seeking relief in federal court. *Id.* at 845. In Minnesota, a petitioner must present his claims to the Minnesota Supreme Court before they can be entertained in federal court. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[A] prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review). . . .").

As part of exhausting his claims, a petitioner must fairly present the federal dimension of each issue to the state courts. *See Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). This does not mean that a petitioner must spell out every detail or nuance of the federal constitutional claim, but he must do enough to ensure that the state courts have notice of the federal issues. *See McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (stating that fairly presenting a federal claim in state court requires petitioner to have "referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue") (internal quotation marks omitted). If the petitioner has not fairly presented his  federal claims in state court, they are unexhausted and generally cannot be considered on the merits by a federal court reviewing a habeas petition. *See* 28 U.S.C. § 2254(b)(1).

Even when a petitioner has raised a claim in state court, it is not automatically ripe for federal review. If the claim was raised in state court, but the state court applied an

"independent and adequate" state procedural rule in declining to rule on the merits of the issue, the claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedurally defaulted claim cannot be entertained in a federal habeas proceeding unless the petitioner shows cause for the default and establishes that he suffered "actual prejudice as a result of the alleged violation of federal law."[1] *Id.*

If, on the other hand, a federal claim was not raised in the state courts—either because it was not fairly presented as a federal issue or because it was not raised at all—a federal court must determine whether the petitioner could still obtain a decision on the merits of his claim in state court. *McCall*, 114 F.3d at 757. If state procedural rules bar the petitioner from getting a ruling on the merits of his claim, it is considered procedurally defaulted. *Id.*; *see also Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005). Though the basis of the default in such a case is different than the one presented in *Coleman*, a federal court considering this type of procedural default may only consider the claim if it satisfies the same cause-and-prejudice analysis. *McCall*, 114 F.3d at 757.

If a petitioner has fairly presented a federal claim and exhausted the available remedies in state court, and the claim was adjudicated on the merits, a federal habeas court may consider the merits. However, a federal court will only grant habeas relief in limited circumstances. The adjudication must either have "resulted in a decision that was

---

[1]     A federal court can also entertain procedurally defaulted claims if the prisoner may be a victim of a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The Eighth Circuit has indicated this standard involves demonstrating actual innocence. *See Gordon v. Arkansas*, 823 F.3d 1188, 1196 (8th Cir. 2016).

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or it must have "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III.    Analysis

Mr. Brown asks the Court to vacate his conviction and sentence and issue a writ of habeas corpus requiring the Respondent to immediately release him from custody. Based on the record before the Court, the governing legal standards, and the decision of the Minnesota Court of Appeals, the Court concludes that Mr. Brown is not entitled to a writ of habeas corpus.

### A.    Ground One: Obstructed from Proving Self-Defense

Ground One of Mr. Brown's petition presents a free-standing claim that he was "obstructed" from providing evidence that he was the victim of an unprovoked attack by A.M., rather than guilty of committing an intentional assault. Mr. Brown asserts that A.M. was the aggressor and he acted in self-defense, but he was prevented from presenting evidence about this during the district court proceedings. Mr. Brown does not reference a constitutional provision in his habeas petition or otherwise identify a specific constitutional right he claims was violated. Nor does Mr. Brown state with any detail who it was that allegedly obstructed him from obtaining or presenting any evidence to support his self-defense claim.

To the extent Mr. Brown claims that his trial counsel withheld evidence from him or obstructed his access to or use of evidence, it is possible that Mr. Brown is raising a

Sixth Amendment ineffective-assistance-of-trial-counsel claim. However, Mr. Brown has elsewhere alleged, in Ground Three of his petition, that his trial counsel was ineffective for withholding evidence from him. If this claim were construed as such an ineffective-assistance claim, it would be duplicative of the claim presented in Ground Three. Indeed, it seems the most natural reading of his petition, especially given the heavy focus of his reply brief on the conduct of his trial counsel, is that it was his own attorney whom he believes obstructed him from presenting evidence supporting his claim of self-defense. The Court addresses that claim below.

It is possible, though Mr. Brown does not state it explicitly, that he is claiming police investigators or the prosecutor failed to disclose evidence that would have supported his self-defense claim and, therefore, would have been exculpatory. Such a claim would appear to allege that his due process rights were violated in contravention of the rule in *Brady v. Maryland*, 373 U.S. 83 (1963). To establish such a claim, Mr. Brown would need to show "that the prosecution suppressed evidence that was favorable to [him] and material to either guilt or punishment." *Jimerson v. Payne*, 957 F.3d 916, 925 (8th Cir. 2020) (citing *Keys v. United States*, 943 F.3d 1152, 1154 (8th Cir. 2019)).

If Mr. Brown's claim were construed to present a claim of a *Brady* violation, this Court finds that it would not entitle him to habeas relief for the following two reasons. First, nothing in Mr. Brown's direct appeal to the Minnesota Court of Appeals or his PFR to the Minnesota Supreme Court presented a *Brady* claim. As a result, Mr. Brown has not exhausted such a claim, and it is procedurally defaulted because Mr. Brown could not now raise it in a state petition for postconviction relief under Minnesota's *Knaffla* rule.

13

*State v. Knaffla*, 243 N.W.2d 737, 741 (1976) ("[W]here direct appeal has once been taken … all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.").

But more importantly, neither the petition nor anything else in the record provides a basis for concluding that a *Brady* violation occurred. Mr. Brown has made no showing in this proceeding that police or the prosecutor withheld or covered up any favorable and material evidence supporting his claim of self-defense.

For these reasons, the Court finds that Ground One of the petition presents no basis for issuing a writ of habeas corpus.

### B.    Ground Two: Destruction of Blood Evidence

In Ground Two of the petition, Mr. Brown alleges that he was obstructed from presenting a claim that he was not the aggressor, but was actually the victim of a brutal attack by A.M. Specifically, he refers to the destruction of blood evidence at the scene of the assault. In his *pro se* supplemental brief to the Minnesota Court of Appeals, Mr. Brown raised this claim and argued that it was a violation of his due process rights. Mr. Brown did not mention the Due Process Clause of the Fourteenth Amendment by name, but under *Arizona v. Youngblood*, 488 U.S. 51 (1988), due process principles protect an individual against a conviction obtained as a result of the bad faith destruction of evidence by law enforcement. "Bad faith can be shown by proof of an official animus or a conscious effort to suppress exculpatory evidence." *Jimerson*, 957 F.3d at 926.

The Court finds that Mr. Brown is not entitled to a writ of habeas corpus under *Youngblood* for at least two reasons. First, the claim was not properly exhausted. Even if

Mr. Brown was raising a *Youngblood* claim by referring to the destruction of blood evidence during his direct appeal, the Minnesota Court of Appeals concluded that Mr. Brown's *pro se* issues were waived because he cited no law in support. *Brown*, 2019 WL 6461306, at *3 (citing *State v. Sontoya*, 788 N.W.2d 868, 876 (Minn. 2010), and *State v. Bartylla*, 755 N.W.2d 8, 23 (Minn. 2008)). This is an independent and adequate state waiver rule invoked by the appellate court to reject the claim without reaching the merits. As a result, any *Youngblood* claim regarding the blood evidence is procedurally defaulted. *See Coleman*, 501 U.S. at 750. Mr. Brown has shown neither cause and prejudice, nor actual innocence, so the procedural default cannot be excused.

Second, in addition to finding waiver of this issue, the court of appeals also found that Mr. Brown's *pro se* arguments failed on their merits. This Court finds the court of appeals' conclusion was not an unreasonable application of clearly established Supreme Court precedent. With respect to any *Youngblood* claim, Mr. Brown did not show during his state court proceedings that the prosecution was responsible for the destruction of any evidence, let alone any blood evidence at the scene of the assault. Mr. Brown similarly makes no such showing here. Mr. Brown does not even assert that the prosecution was responsible for the alleged destruction of any evidence. Thus, it was not unreasonable, under these circumstances, for the Minnesota Court of Appeals to have rejected this claim. For these reasons, the Court concludes that Ground Two provides no basis for awarding habeas relief.

**C.    Ground Three: Ineffective Assistance— Failing to Present Evidence and Withholding Evidence**

Construing Mr. Brown's petition and his other submissions in this case liberally, he has alleged that his conviction and sentence were obtained in violation of his Sixth Amendment right to effective assistance of counsel for several reasons. The Court finds that Mr. Brown is not entitled to habeas relief on this claim.

A Sixth Amendment ineffective-assistance-of-counsel claim is governed by the two-part *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To succeed on a *Strickland* claim on direct appeal, the appellant must show that counsel's actions fell below an objective standard of reasonableness, and that but for counsel's actions, there is a reasonable probability that the outcome of the proceeding would have been different. *Id.* Because this claim is being raised in a habeas petition, however, to obtain relief Mr. Brown "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002). For this Court to award relief, Mr. Brown "must show that the [Minnesota] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.*; *see also Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (explaining that the combination of AEDPA and *Strickland* creates a "doubly deferential" standard of review (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))).

Mr. Brown raised several ineffective-assistance-of-trial-counsel claims during his state court appeal. As relevant to Ground Three of the habeas petition, Mr. Brown's *pro se* brief to the Minnesota Court of Appeals asserted that trial counsel was ineffective for

the following reasons: (1) he failed to "build a case"; (2) he failed to "present discovery material that was in [Brown's] favor"; (3) he failed to introduce "numerous mitigating factors"; (4) he did not retain an investigator until many months after the state district court proceedings had begun; and (5) he revealed client confidences.[2]

The Minnesota Court of Appeals rejected these claims for two reasons. First, the court of appeals found that Mr. Brown waived or forfeited these arguments because he cited no law in support of his *pro se* claims. "[T]he rule that *pro se* claims are waived on appeal if not supported by citations to the record or legal authority is firmly established and regularly followed in Minnesota." *Munt v. Grandlienard*, No. 13-cv-3573 (SRN/SER), 2015 WL 144820, at *8 (D. Minn. Jan. 12, 2015), *aff'd* 829 F.3d 610 (8th Cir. 2016); *Hill v. Minnesota*, No. 12-cv-3166 (JNE/SER), 2013 WL 7389510, at *8 (D. Minn. Nov. 18, 2013) (same), *report and recommendation adopted,* No.12-cv-3166, 2014 WL 668162 (D. Minn. Feb. 20, 2014). Thus, the ineffective-assistance claims Mr. Brown presented are procedurally defaulted. A federal habeas claim can be procedurally defaulted if a state court explicitly applies a procedural rule against a petitioner. *See, e.g.*, *Caldwell v. Mississippi*, 472 U.S. 320 (1985) (citing *Ulster County Court v. Allen,* 442 U.S. 140, 152–54 (1979)); *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004)

---

[2]    Mr. Brown's petition does not plainly allege that his attorney violated the duty of confidentiality during the state district court proceedings. However, even if he intends to raise such a claim as a basis for habeas relief, Mr. Brown does not identify what confidential information was improperly disclosed by his counsel, nor does he explain how such a disclosure was so prejudicial that the Minnesota Court of Appeals' rejection of the claim was objectively unreasonable. Therefore, this argument does not provide a basis for relief.

(emphasizing that "[t]he default must have been actually imposed; it is not enough that the state court *could* or *should have* imposed a default") (alteration in original) (citation omitted), *as amended* (Dec. 14, 2004). The Minnesota Court of Appeals did just that, so the claims Mr. Brown raised during his direct appeal cannot be the basis of habeas relief.

Second, the Minnesota Court of Appeals found that Mr. Brown's ineffective-assistance claims lacked merit. In doing so, the court of appeals relied on a Minnesota state case applying the *Strickland* standard. *Brown*, 2019 WL 6461306, at *4 (citing *Crow v. Minnesota*, 923 N.W.2d 2, 14 (Minn. 2019) (finding that an ineffective assistance claim requires a showing that the attorney's representation "fell below an objective standard of reasonableness" and was prejudicial)). In briefly addressing the merits of the ineffective-assistance claims, the court of appeals concluded that Mr. Brown could not satisfy *Strickland* because he offered no supporting evidence. *Brown*, 2019 WL 6461306, at *4.

To the extent the ineffective-assistance claims in Ground Three overlap with those Mr. Brown asserted during his direct appeal, the Court cannot conclude that the Minnesota Court of Appeals unreasonably applied clearly established Supreme Court precedent. During his direct appeal, Mr. Brown did not illuminate his vague allegations that his attorney failed to "build a case," highlight mitigating factors, present discovery material, and timely hire an investigator. As presented in his *pro se* brief, it was unclear how those actions could have been deemed prejudicial under *Strickland*. Because Mr. Brown points to no evidence in the record before the Minnesota Court of Appeals

that would satisfy the *Strickland* test for an ineffective-assistance claim, the state court's determination was not an unreasonable application of Supreme Court precedent.

With respect to allegations in Ground Three that do not plainly overlap with those presented during his direct appeal, the Court similarly finds that Mr. Brown is not entitled to habeas relief. These include Mr. Brown's claims that his counsel did not present photographs of his injuries and failed seek dismissal of the charges against him based on self-defense. Mr. Brown's supplemental *pro se* brief during his direct appeal did not assert that his attorney's representation was deficient for these specific reasons. Because these issues were not raised during his direct appeal, they are not exhausted for purposes of this habeas proceeding, and unexhausted claims generally cannot form the basis for habeas relief under the AEDPA.

Moreover, at the time of his direct appeal, Mr. Brown knew that his attorney did not present photographs of his injuries during the district court proceedings. He also knew, or should have known, that his attorney did not file a motion to dismiss on grounds of self-defense, because such a motion would have been a public record. Because Mr. Brown knew or should have known of the basis for such ineffective-assistance claims at the time of the direct appeal, but did not raise them, under the *Knaffla* rule he cannot raise them now in a state post-conviction proceeding. 243 N.W.2d at 741. Therefore, these new claims in Ground Three of the petition are procedurally defaulted.

Finally, in Ground Three Mr. Brown asserts that his trial counsel is withholding documents that would have proven the claims he asserted on direct appeal and would provide support for other claims during a post-conviction proceeding. In his reply brief in

this proceeding, Mr. Brown clarifies that his trial counsel has still not provided him with his entire case file, which includes certain motion papers and other "important documents." [ECF No. 9 at 2]. Mr. Brown argues that his trial counsel's refusal to provide him such materials satisfies the narrow exceptions for habeas courts' consideration of procedurally defaulted claims. [ECF No. 9 at 8–9]. Thus, this Court will consider whether Mr. Brown's trial attorney's alleged withholding of his case file satisfies either the cause-and-prejudice or the fundamental-miscarriage-of-justice exceptions to the bar on considering procedurally defaulted claims.

"If 'the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice,' then federal courts may consider the procedurally defaulted claim." *Thomas v. Payne*, 960 F.3d 465, 471 (8th Cir. 2020) (quoting *Coleman*, 501 U.S. at 750). "To establish cause, a petitioner must show that some objective factor external to the defense prevented him from presenting or developing the factual or legal basis of his constitutional claim." *Joubert v. Hopkins*, 75 F.3d 1232, 1242 (8th Cir. 1996). To establish "actual prejudice," a petitioner must show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). To show a miscarriage of justice, a petitioner "must present new reliable evidence that he was innocent of the crime of which he was convicted." *Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010).

The Court does not condone an attorney's refusal to provide a client or former client with his or her case file. Indeed, attorneys are ethically required to provide such a file upon the client's request, and Mr. Brown has filed a letter he sent to his trial attorney requesting that his file be produced. When a criminal defense attorney's involvement in his client's case ends, as often happens when counsel is retained for trial alone, promptly disclosing the file to the former client enables the client to determine the issues he wishes to explore on appeal. Mr. Brown's frustration regarding his described inability to obtain his case file is understandable.

Notwithstanding these observations, Mr. Brown's allegations regarding his attorney's refusal to provide him with information do not excuse the procedural default of his ineffective-assistance-of-counsel claims. Specifically, Mr. Brown has failed to demonstrate actual prejudice because he makes only conclusory assertions regarding the materials his trial counsel was allegedly refusing to give him. He does not explain what these materials are with any specificity at all. Nor does he suggest how any withheld document might have resulted in a different outcome in his case. Based on the record before the Court, there is no basis to conclude that Mr. Brown would have been better able to substantiate his appellate issues if he had access to any of the "motion papers" or other "important documents" that he did not have access to due to withholding of his file. Nor has Mr. Brown presented any reliable evidence indicating that he was innocent of the assault. As a result, he has not shown a fundamental miscarriage of justice would result if his procedurally defaulted ineffective-assistance claims were not considered in this proceeding.

21

For these reasons, the Court concludes that Ground Three provides no basis for habeas relief.

### D.    Grounds Four and Five: Judicial Misconduct—Interference with Surgery and Coerced Guilty Plea

In Grounds Four and Five, Mr. Brown asserts that Judge Mahler engaged in misconduct by interfering with his ability to obtain a necessary surgical procedure and coercing him into accepting a plea agreement. In his *pro se* supplemental brief to the Minnesota Court of Appeals, Mr. Brown raised the issue of neglected medical treatment, and he explained that he felt he accepted the plea agreement under duress due to the conduct of his attorney and Judge Mahler. [ECF No. 8-2 at 38–40]. As with the other issues Mr. Brown raised in is pro se submission to the court of appeals, the Minnesota Court of Appeals deemed these claims waived because Mr. Brown failed to cite any legal authority to support them. *Brown*, 2019 WL 6461306, at *3. Because the state court rejected the claims based on an independent state procedural rule that is well-established and regularly followed by Minnesota courts, these claims are procedurally defaulted. *Munt*, 2015 WL 144820, at *8. The petition does not present any basis for concluding that the procedural default should be excused based on cause and prejudice or due to a miscarriage of justice. Therefore, Grounds Four and Five do not provide a basis for habeas relief.

Even if these claims were not procedurally defaulted for purposes of federal habeas review, the Court finds they do not provide a basis on which to issue the writ. With respect to the claim regarding his surgery, Mr. Brown asserts that Judge Mahler

intentionally intervened to prevent him from having an operation to repair a hernia during or after a January 5, 2018 hearing. [ECF No. 1 at 9]. However, it appears that while Mr. Brown served his pretrial detention at the Stearns County Jail, it was the jail's staff members that canceled his previously scheduled hernia surgery, and did so due to an issue with insurance rather than as an intentional means of coercing him into changing his plea. [ECF No. 10 at 9]. Although Mr. Brown states that he later realized the surgery was canceled due to Judge Mahler's intervention [ECF No. 10 at 13; ECF No. 9 at 3], he offers no support for this assertion. Indeed, records that Mr. Brown has submitted indicate that his surgery was postponed after a doctor at Stearns County Jail spoke to the surgeon and it was determined that the procedure could wait until after Mr. Brown was no longer in jail. [ECF No. 10-1 at 5]. Therefore, the underlying premise of Mr. Brown's claim is unsupported by anything in the record before this Court, and he has not shown that the Minnesota Court of Appeals unreasonably rejected his claim that he entered the *Alford* plea under duress due to the delay in surgical treatment. *See Brown*, 2019 WL 6461306, at *3.

Mr. Brown similarly fails to make a compelling case that his change of plea was coerced by Judge Mahler allegedly encouraging him to plead guilty during the July 12, 2018 pretrial hearing. As in federal court, Minnesota judges are prohibited from participating in the plea-bargaining process. Minn. R. Crim. P. 15.04, subd. 3(1) ("A district court judge must not participate in plea negotiations."); *see also* Fed. R. Crim. P. 11(c)(1). However, under Minnesota law, "the judge may inquire into the status of settlement negotiations, … and based upon the parties' joint request, the judge may

disclose general sentencing practices," before a guilty plea is entered. Minn. R. Crim. P.

15.04, subd. 3(1). In any event, "a federal court can only set aside a state plea of guilty if

the plea was involuntary." *Toler v. Wyrick*, 563 F.2d 372, 374 (8th Cir. 1977). The

standard for judging the voluntariness of a guilty plea is as follows:

> [A] plea of guilty entered by one fully aware of the direct consequences,
> including the actual value of any commitments made to him by the court,
> prosecutor, or his own counsel, must stand unless induced by threats (or
> promises to discontinue improper harassment), misrepresentation
> (including unfulfilled or unfulfillable promises), or perhaps by promises
> that are by their nature improper as having no proper relationship to the
> prosecutor's business ....

*United States v. Brady*, 397 U.S. 742, 749 (1970) (quoting *Shelton v. United States*, 246

F.2d 571, 572 n.2 (5th Cir. 1957)). Voluntariness of a guilty plea is determined by

examining all relevant circumstances, *id.*, and a guilty plea is valid when it "represents a

voluntary and intelligent choice among the alternative courses of action open to the

defendant," *Alford*, 400 U.S. at 31.

The Minnesota Court of Appeals rejected Mr. Brown's claims that his plea had

been made under duress, noting that he stated in his plea petition that he had not been ill,

and denied that his plea was induced by promises or threats. 2019 WL 6461306, at*3. In

his reply brief in this proceeding, Mr. Brown points to comments Judge Mahler made

during the July 12, 2018 pretrial hearing. She indicated that she would be willing to make

herself available to help facilitate a compromise, especially given the length of time that

Mr. Brown had spent in custody pending his trial. He explains:

> There was great coercion in the July 12th hearing by Judge Mary
> Mahler to enter in a "compromise" by stating to me while knowing fully I
> was suffering due to intentionally interfered with medical treatment to

> repair a serious injury to me, "I have concerns that Mr. Brown has been in custody since the underlying incident and that is coming up on a year next month" "Certainly if there is an opportunity for me to facilitate a resolution, I would make myself available" and "So if there is anything else I could do to help facilitate a resolution, please feel free to call upon me." and "Mr. Brown are you comfortable continuing to waive your time being that you're the one who's in custody over there?" to which I say "Yeah, No, I— I mean, I've been here this long and I've been injured while I've been here this long."

[ECF No. 9 at 4]. None of these allegations demonstrates that Judge Mahler threatened Mr. Brown or otherwise engaged in improper conduct in connection with his decision to enter an *Alford* plea. Nothing in the record suggests, for example, that Judge Mahler suggested to Mr. Brown that she would ensure he was able to get surgery to repair his hernia if he would change his plea. Nor do Mr. Brown's allegations demonstrate that, at the time he changed his plea in September 2018, he was doing so because of any threats or promises by Judge Mahler.

For these reasons, even if Grounds Four and Five were not procedurally defaulted the Court concludes that it was not objectively unreasonable for the Minnesota Court of Appeals to determine that Mr. Brown failed to show his *Alford* plea was involuntary due to alleged coercion by the trial judge.

### E.    Ground Six: Ineffective Assistance—Change of Plea

In Ground Six of the petition, Mr. Brown asserts that he was denied effective assistance of counsel in connection with his decision to enter an *Alford* plea. Mr. Brown claims that his attorney promised him he would receive a sentence involving credit for timed served, a period of probation, and his release from jail. Mr. Brown alleges that his attorney did not go over the plea petition with him "line by line," instructed him not to

mention "self-defense" at all during the plea hearing, and told him to agree to everything said at the plea hearing itself. [ECF No. 1 at 11].

These claims were not explicitly addressed by the Minnesota Court of Appeals, and Mr. Brown acknowledges that he did not fully exhaust them. Though he asserts that he raised the issue on appeal he states: "However, I did not raise it in this much detail as it is hard to prove and I did not want to fully expose my argument. Also due to the fact I believed there would have been more investigation into my original claims." [ECF No. 1 at 12]. In his *pro se* supplemental brief, Mr. Brown did not assert that his counsel was ineffective for promising him a probationary sentence, failing to sufficiently go over the plea agreement with him, or advising him not to mention self-defense during the plea hearing. The only place Mr. Brown mentioned any of these ineffective-assistance claims was in his *pro se* reply brief. There he claimed that his "attorney assured [him] by taking this plea [he] would receive time served and probation under the condition [he] concede and agree with everything at the plea hearing and follow [his] terms of release." [ECF No. 8-2 at 71–72].

On this record, it is clear that Mr. Brown failed to fully exhaust these claims. His failure to properly raise these claims during his direct appeal means that he did not provide the state courts with a full and fair opportunity to address them. Though he referenced counsel's alleged promise of a probationary sentence in his *pro se* reply brief, this was not a procedurally appropriate manner of presenting an appellate claim. The Minnesota Court of Appeals will not consider issues raised for the first time in a reply

brief. *See State v. Petersen*, 799 N.W.2d 653, 660 (Minn. Ct. App. 2011) (explaining that issues first raised in a reply brief are waived and will not be considered on appeal).

In addition, the Court finds that these claims are now procedurally defaulted. When Mr. Brown filed his direct appeal, he would have known whether his attorney made a promise that contradicted the plea agreement, failed to adequately go over the plea petition with him, and instructed him not to mention self-defense during the plea hearing. Because they were known to him, or should have been known to him, at the time of his direct appeal, these issues could not now be raised in a state post-conviction proceeding. *See Knaffla*, 243 N.W.2d at 741 (precluding consideration of post-conviction petitions that raise matters known but not raised during a direct appeal). Claims barred under *Knaffla* for this reason are procedurally defaulted for federal habeas review. *McCall*, 114 F.3d at 757–58.

Because the claims in Ground Six are procedurally defaulted, and there is no basis in the record to excuse the default, they present no basis for habeas relief.

### F.    Ground Seven: Invalid Guilty Plea and Sentencing Error

In Ground Seven, Mr. Brown asserts that Judge Mahler should not have imposed the sentence he received because she wrongfully determined that he had refused chemical dependency treatment. He also claims that Judge Mahler improperly found that there was a factual basis for his plea given her statements crediting Mr. Brown's assertion that A.M. attacked him first, thereby rendering his *Alford* plea inaccurate and his sentence unconstitutional.

### *Factual Basis for the Plea*

During his direct appeal, Mr. Brown's appellate counsel argued that his *Alford* plea was inaccurate, at least in part, because Mr. Brown maintained that his actions were done in self-defense. In *Arrington v. Minnesota*, a recent decision from this District addressing a petitioner's challenge to the adequacy of the factual basis for an *Alford* plea, the court summarized the law in this area:

> The factual basis requirement rests in Fed. R. Crim. P. 11(f), not the Constitution. Usually, then, the requirement that there be a factual basis for a plea is non-cognizable in a federal habeas action. That said, establishment of a factual basis may be constitutionally required when the guilty plea is accompanied by claims of actual innocence, as when a defendant enters an *Alford* plea.

*Arrington v. Minnesota*, No. 19-cv-1377 (MJD/BRT), 2020 WL 2841874, at *5 (D. Minn. Mar. 24, 2020) (cleaned up), *report and recommendation adopted*, No. 19-cv-1377 (MJD/BRT), 2020 WL 2840200 (D. Minn. June 1, 2020). Despite noting that the Supreme Court has not yet clearly held that such a challenge is reviewable by a federal habeas court, the *Arrington* court reviewed the petitioner's challenge to determine whether the state court's decision was unreasonable. *Id.* In doing so, the court observed that the Minnesota Supreme Court accurately summarized the evidence against Arrington and that his acknowledgments regarding the strength of the state's evidence weighed heavily against his request for habeas relief. *Id.* ("Arrington himself recognized at the time of his *Alford* plea that the evidence arrayed against him was daunting, and representations made by a defendant at a plea hearing carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings.").

Here too, even assuming that establishment of a factual basis for an *Alford* plea is constitutionally required, and that Mr. Brown's claim is cognizable, this Court concludes Mr. Brown is not entitled to relief on this issue because the Minnesota Court of Appeals reasonably concluded that there was an adequate factual basis for Mr. Brown's plea. The court of appeals acknowledged Mr. Brown's argument that his plea was inaccurate because he acted in self-defense, but pointed to evidence from the plea hearing in which "he agreed that if he went to trial, there was a substantial likelihood that he could be found guilty of the offense and that a jury could find him guilty based on the evidence the prosecutor could offer." *Brown*, 2019 WL 6461306, at *2 (cleaned up). Further, "[i]n reviewing the evidence with the prosecutor, he agreed that the state could show that he engaged in an altercation with A.M., two witnesses would testify that they observed him stomping or kicking A.M. in the face, and medical evidence would establish that A.M. sustained a traumatic brain injury." *Id.* Such admissions weigh heavily against a conclusion that his *Alford* plea lacks a sufficient factual basis. *See Arrington*, 2020 WL 2841874, at *5 ("[R]epresentations made by a defendant at a plea hearing carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings.") (internal quotation marks omitted).

Mr. Brown has submitted a drawing of the crime scene and photographs of his injuries, which he claims show that he acted in self-defense. [ECF No. 10-2; ECF No. 1-2 at 7–10]. Mr. Brown has also submitted transcripts from private investigatory Pete Legus' interviews with Mr. Brown's neighbors, which Mr. Brown argues establish that A.M. was angry prior to his attack on Mr. Brown. [ECF No. 1-2 at 11–24]. But "at most,

[Mr. Brown's challenge] provides a basis from which a juror might have concluded that he was not proven guilty of the offense had the matter been brought to trial and had all possible inferences been drawn by that juror in [his] favor." *Arrington*, 2020 WL 2841874, at *6. This is not the same as saying that the state did not have sufficient evidence to obtain a conviction. *Id.* Mr. Brown's arguments do not undercut the reality that A.M. was seriously injured as a result of Mr. Brown's conduct, nor that the prosecution had witnesses who would testify that they saw him kick A.M. in the head. There was also evidence of Mr. Brown's admission to police that he was angry, that he threatened to kill A.M., and that he "stomped him." *Brown*, 2019 WL 6461306, at*1. Under these circumstances, the Court concludes that it was reasonable for the Minnesota Court of Appeals to reject his claim that there was an insufficient factual basis on which to accept his *Alford* plea.

Nor does Judge Mahler's comment that she credited that A.M. was the initial aggressor necessarily mean that there was an inadequate factual basis for his *Alford* plea. As Judge Mahler noted, the state indicated there was witness testimony that showed Mr. Brown kicked and hit A.M. when he was on the ground. *Brown*, 2019 WL 6461306,at *1. This evidence would indicate that at some point after A.M. initiated the attack on Mr. Brown, Mr. Brown's own response became unreasonable, which would defeat any claim of self-defense under Minnesota law. *State v. Glowacki*, 630 N.W.2d 392, 399 (Minn. 2001) (providing that a person may act in self-defense by using only the force necessary to prevent bodily harm). Moreover, given that A.M. was on the ground, the state could present evidence that would disprove at least one element of a self-defense

claim—"the absence of a reasonable possibility of retreat to avoid the danger." *See Loving v. State*, 891 N.W.2d 638, 646–47 (Minn. 2017) (listing the four elements of a self-defense claim and noting that the state has the burden to disprove at least one of those elements). Under these circumstances, the Court cannot conclude that the Minnesota Court of Appeals unreasonably rejected Mr. Brown's claim that his plea lacked a sufficient factual basis because the trial court acknowledged that A.M. was the initial aggressor.

### *Downward Departure*

With respect to the claim in Ground Seven relating to the district court's allegedly erroneous finding that Mr. Brown refused chemical dependency treatment, the Court finds that this claim has not been exhausted and is procedurally defaulted for the following reasons. This argument was presented during Mr. Brown's direct appeal as part of appellate counsel's argument that the district court had abused its discretion in refusing to depart downward from the guidelines sentence. Specifically, Mr. Brown's appellate counsel pointed to his completion of two Rule 25 chemical dependency assessments and his clean urinalysis while on release pending sentencing. [ECF No. 8-2 at 23]. However, neither appellate counsel's brief nor Mr. Brown's *pro se* supplemental brief fairly presented this issue as a federal claim.

Proper exhaustion requires not only that a claim be presented to the state courts in the first instance, but that its federal character be raised so that the state courts have the first opportunity to rule on any federal issues. Here, the direct appeal briefing did not alert the state courts to any federal claim relating to the district court's determination that

a downward departure was inappropriate because Mr. Brown refused chemical

dependency treatment. Because Mr. Brown did not raise this issue as a federal claim it is

unexhausted. And because he could have raised any federal claim relating to this issue at

the time of his direct appeal, but did not, it is procedurally defaulted under *Knaffla*.

*Balderas v. Minnesota*, No. 07-cv-1311 (JNE/JSM), 2008 WL 495535, at *8 (D. Minn.

Feb. 20, 2008) (finding that a habeas claim regarding failure to grant downward departure

was unexhausted and defaulted where the issues were raised as state law errors only

during petitioner's direct appeal).

For these reasons, the Court concludes that Ground Seven of the petition provides

no basis for habeas relief.

### G. Ground Eight: Wrongful Conviction

In Ground Eight, Mr. Brown asserts that he was "wrongfully convicted" in

violation of his due process rights for the following reasons: "I had no intent to harm

[A.M.]. I tried everything in my power to pacify and then flee him. He had full intent of

harming me all night and got his chance when I turned my back on him." [ECF No. 1 at

14]. Although Mr. Brown invokes his constitutional right to due process of law, he does

not explain what due process violation led to his wrongful conviction. It appears that

Ground Eight simply rehashes his argument that it was improper for the district court to

accept his *Alford* plea when he maintained that he acted in self-defense. However, for the

same reasons that this Court recommends that Ground Seven be rejected with respect to

his self-defense arguments, the Court concludes that Ground Eight provides no basis for

habeas relief.

## Recommendation

Based on the foregoing, the Court recommends that the petition [ECF No. 1]

should be denied and this action dismissed with prejudice.

Date: December 1, 2021

                                 *s/Katherine Menendez*
                                 Katherine Menendez
                                 United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.